JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

CIGNA HEALTHCARE OF TENNESSEE, INC.

**(b)** County of Residence of First Listed Plaintiff   Williamson County, TN
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Odell Horton, Jr.,. Wyatt Tarrant & Combs, LLP
6070 Poplar Avenue Suite 300 Memphis, TN 38119

## DEFENDANTS

BAPTIST MEMORIAL HEALTHCARE CORPORATION

County of Residence of First Listed Defendant   Shelby County, TN
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

David King, Polsinelli, 401 Commerce Street
Suite 900, Nashville, TN 37219

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** — **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane — ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability — Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & — ☐ 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander — Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' — Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability — ☐ 368 Asbestos Personal ☐ 340 Marine — Injury Product ☐ 345 Marine Product — Liability | | ☐ 835 Patent - Abbreviated New Drug Application ☐ 840 Trademark | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | Liability — **PERSONAL PROPERTY** ☐ 350 Motor Vehicle — ☐ 370 Other Fraud | **LABOR** ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle — ☐ 371 Truth in Lending Product Liability — ☐ 380 Other Personal | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** ☐ 861 HIA (1395ff) | Protection Act ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract ☐ 195 Contract Product Liability | ☐ 360 Other Personal — Property Damage Injury — ☐ 385 Property Damage | ☐ 740 Railway Labor Act ☐ 751 Family and Medical | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury - — Product Liability Medical Malpractice | Leave Act ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** — **PRISONER PETITIONS** | ☒ 791 Employee Retirement Income Security Act | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights — **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting — ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment — ☐ 510 Motions to Vacate | | or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ — Sentence | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations — ☐ 530 General | | 26 USC 7609 | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - — ☐ 535 Death Penalty Employment — **Other:** | **IMMIGRATION** ☐ 462 Naturalization Application | | Agency Decision ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities - — ☐ 540 Mandamus & Other Other — ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | State Statutes |
| | ☐ 448 Education — ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Employment Retirement Income Security Act of 1974

Brief description of cause:
Application to vacate arbitration award because of violation of ERISA

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE   August 14, 2023

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE

JS 44 Reverse (Rev. 04/21)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TENNESSEE, WESTERN DIVISION**

| | |
|---|---|
| **CIGNA HEALTHCARE OF TENNESSEE, INC., on behalf of itself and its affiliated entities,** | ) ) ) ) |
| **Applicant,** | ) ) ) |
| **v.** | ) ) |
| **BAPTIST MEMORIAL HEALTHCARE CORPORATION,** | ) ) ) |
| **Respondent.** | ) ) ) |

**CIGNA HEALTHCARE OF TENNESSEE, INC.'S APPLICATION
(1) TO VACATE JULY 11, 2023 SECOND PARTIAL FINAL AWARD; AND
(2) TO VACATE (IN PART) SEPTEMBER 7, 2022 PARTIAL FINAL AWARD**

WYATT, TARRANT, & COMBS, LLP

Odell Horton, Jr. (Tenn. Bar No. 12426)
Andrew J. Pulliam (Tenn. Bar No. 16863)
6070 Poplar Avenue
Suite 300
Memphis, TN 38119
ohorton@wyattfirm.com
apulliam@wyattfirm.com
901.537.1000

DLA PIPER LLP (US)

John J. Hamill (*pro hac vice forthcoming*)
Pamela Begaj Loutos (*pro hac vice forthcoming*)
Devin J. Carpenter (*pro hac vice forthcoming*)
444 West Lake Street, Suite 900
Chicago, IL 60606
john.hamill@us.dlapiper.com
pamela.loutos@us.dlapiper.com
devin.carpenter@us.dlapiper.com
312.368.7036

*Attorneys for Cigna HealthCare of Tennessee, Inc*

# <u>TABLE OF CONTENTS</u>

**Overview** ................................................................................................................ 1

**Power to Issue Requested Relief** ........................................................................... 3

**Factual Background** ................................................................................................ 3

   A.  The Arbitration Agreement ........................................................................... 3

   B.  The Dispute ................................................................................................... 4

   C.  The First Partial Final Award (September 7, 2022) ...................................... 6

   D.  The Protective State Court Filing (Where No Award Has Yet Been Made) ...................... 7

   E.  The Second Partial Final Award (July 11, 2023) .......................................... 8

**Jurisdiction** .......................................................................................................... 9

**Standard of Review** ............................................................................................. 10

**Argument** ............................................................................................................. 11

   I.  ERISA Preempts and Invalidates the Panel's Creation and Imposition of a Non-Existent Quantum Meruit Remedy ........................................................ 12

      A.  ERISA preempts the quantum meruit remedy the Awards would impose ................ 12

      B.  *Rutledge* does not change ERISA preemption of quantum meruit ..................... 15

      C.  Baptist's quantum meruit claim is completely preempted by ERISA ..................... 18

      D.  *Badgerow* and progeny reaffirm the federal jurisdiction here under ERISA to preempt and vacate the Awards ............................................................ 20

   II.  The Panel Exceeded Its Authority ............................................................... 23

   III.  The Arbitration Awards Were in Manifest Disregard of the Law ..................... 27

      A.  It was manifest disregard of the law to rule that ERISA does not preempt quantum meruit remedies, especially in Tennessee ........................... 27

      B.  It was manifest disregard of the law to rule that *HCA Health Services* was wrongly decided or otherwise inapplicable ..................................... 27

**Conclusion** ........................................................................................................... 28

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Air Trek, Inc. v. Cap. Steel & Wire, Inc.*,
  2019 WL 4873401 (W.D. Mich. Oct. 2, 2019)...............................................15, 16

*Aldridge v. Regions Bank*,
  2021 WL 4718489 (E.D. Tenn. Oct. 8, 2021) ...............................................14, 15

*Am. College of Emergency Physicians v. Price*,
  264 F. Supp. 3d 89 (D.D.C. 2017) .........................................................5

*AMISUB (SFH), Inc. v. Cigna Health and Life Ins. Co.*,
  No. 2:21-cv-02308, ECF 110 (W.D. Tenn. July 11, 2023)........2, 14, 15, 16, 19, 20, 27, 28, 30

*Augusta Cap., LLC v. Reich & Binstock, LLP*,
  2009 WL 2065555 (M.D. Tenn. July 10, 2009) ..........................................12, 26

*Badgerow v. Walters*,
  142 S.Ct. 1310 (2022).......................................................10, 13, 22, 23, 24

*Barbier v. Shearson Lehman Hutton, Inc.*,
  948 F.2d 117 (2d Cir. 1991)..............................................................27

*Batesville Casket Co. v. United Steel Workers of Am., Loc. Union No. 9137*,
  2008 WL 4066105 (E.D. Tenn. Aug. 26, 2008) ...........................................3

*Buchholz v. Meyer Njus Tanick, PA*,
  946 F.3d 855 (6th Cir. 2020) ............................................................9

*Burka v. New York City Transit Auth.*,
  1992 WL 251445 (S.D.N.Y. Sept. 18, 1992).............................................27

*Coffee Beanery, Ltd. v. WW, L.L.C.*,
  300 F. App'x. 415 (6th Cir. 2008) ......................................................12

*Cole v. Am. Specialty Health Network, Inc.*,
  2015 WL 1734926 (M.D. Tenn. Apr. 16, 2015)..........................................15, 17

*D & E Const. Co. v. Robert J. Denley Co.*,
  38 S.W.3d 513 (Tenn. 2001)............................................................27

*Dealer Comput. Servs., Inc. v. Dub Herring Ford*,
  547 F.3d 558 (6th Cir. 2008) ...........................................................9

*Doe v. HCA Health Servs. of Tenn., Inc.*,
   46 S.W.3d 191 (Tenn. 2001) ................................................................29

*Duncan v. Unum Life Ins. Co. of Am.*,
   615 F. Supp. 3d 785 (M.D. Tenn. 2022) ...............................................14

*Egelhoff v. Egelhoff ex rel. Breiner*,
   532 U.S. 141 (2001) .............................................................................19

*Fort Halifax Packing Co. v. Coyne*,
   482 U.S. 1 (1987) .................................................................................19

*George v. Rushmore Serv. Ctr., LLC*,
   2023 WL 3735977 (D.N.J. May 30, 2023) ...........................................24

*Girl Scouts of Middle Tennessee, Inc. v. Girl Scouts of the U.S.A.*,
   770 F.3d 414 (6th Cir. 2014) ...............................................................20

*Glennon v. Dean Witter Reynolds, Inc.*,
   83 F.3d 132 (6th Cir. 1996) ...................................................................3

*Gobeille v. Liberty Mut. Ins.*,
   577 U.S. 312 (2016)................................................................15, 18, 19

*Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*,
   545 U.S. 308 (2005)..............................................................................11

*Graulau, v. Credit One Bank, N.A.*,
   2023 WL 2930957 (M.D. Fla. Mar. 27, 2023) .....................................24

*Gray v. Metro. Life Ins.*,
   2019 WL 13195296 (E.D. Tenn. Dec. 9, 2019)...............................20, 21

*Greenhouse Holdings, LLC v. Int'l Union of Painters & Allied Trades Dist.
Council 91*,
   43 F.4th 628 (6th Cir. 2022) ............................................................9, 24

*Halim v. Great Gatsby's Auction Gallery, Inc.*,
   516 F.3d 557 (7th Cir. 2008) ...............................................................26

*HCA Health Services of Tennessee, Inc. v. BlueCross Blue Shield of Tennessee,
Inc.*,
   2016 WL 3357180 (Tenn. Ct. App. June 9, 2016) ............2, 8, 17, 26, 27, 28, 29, 30

*Henretta v. Chrysler Motors Corp.*,
   977 F.2d 595 (10th Cir. 1992) ..............................................................18

*Henson v. Morgan Stanley DW Inc.*,
 2005 WL 1806426 (M.D. Tenn. June 7, 2005)........................................................12

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
 514 U.S. 52 (1995).................................................................................................27

*McCammon v. Dollywood Found.*,
 2023 WL 2637411 (E.D. Tenn. Mar. 24, 2023) ...................................................16

*Metlife Sec., Inc. v. Holt*,
 2016 WL 3964459 (E.D. Tenn. July 21, 2016) ...................................................25

*Metro. Life Ins. Co. v. Taylor*,
 481 U.S. 58 (1987).................................................................................................20

*Mid-S. Maint. Inc. v. Paychex Inc.*,
 2015 WL 4880855 (Tenn. Ct. App. Aug. 14, 2015)............................................25

*Milby v. MCMC LLC*,
 844 F.3d 605 (6th Cir. 2016) ...............................................................................20

*Missouri River Servs., Inc. v. Omaha Tribe of Nebraska*,
 267 F.3d 848 (8th Cir. 2001) ...............................................................................26

*Nationwide Mut. Ins. Co. v. Home Ins.*,
 330 F.3d 843 (6th Cir. 2003) ...............................................................................12

*NCR Corp. v. Sac-Co.*,
 43 F.3d 1076 (6th Cir. 1995) ..................................................................................3

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins.*,
 514 U.S. 645 (1995)..........................................................................................16, 17

*Palagyi v. Canada Nat.*,
 2013 WL 5519654 (N.D. Ohio Oct. 2, 2013) .....................................................21

*Progressive Ins. Co. v. Blue Cross Blue Shield of Michigan*,
 2019 WL 3342922 (E.D. Mich. July 25, 2019) ...................................................20

*Ransom & Randolph Co. v. Loc. 12, Int'l Union*,
 2007 WL 2626187 (N.D. Ohio Sept. 6, 2007)......................................................26

*Rutledge v. Pharm. Care Mgmt. Ass'n*,
 141 S.Ct. 474 (2020).................................................................7, 13, 17, 18, 19

*San Jose Healthcare Sys., LP v. Stationary Engineers Loc. 39 Pension Tr. Fund*,
 2022 WL 2161504 (N.D. Cal. June 15, 2022) .....................................................24

*Select Specialty Hosp.-Memphis, Inc. v. Trustees of Langston Companies, Inc.*,
2020 WL 4275264 (W.D. Tenn. July 24, 2020) ....................................................14

*Smith v. Waller*,
1997 WL 412537 (Tenn. Ct. App. July 24, 1997) ................................................27

*Totes Isotoner Corp. v. Int'l Chem. Workers Union Council/UFCW Loc. 664C*,
532 F.3d 405 (6th Cir. 2008) .............................................................................26

*Town & Country Salida, Inc. v. Dealer Computer Servs., Inc.*,
521 F. App'x 470 (6th Cir. 2013) ........................................................................3

*Trustees of New York State Nurses Ass'n Pension Plan v. White Oak Glob.
Advisors, LLC*,
2022 WL 2209349 (S.D.N.Y. June 20, 2022) ..............................................23, 24

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*,
535 U.S. 635 (2002) ......................................................................................11, 23

*Wilson v. Unum Grp.*,
2021 WL 4268046 (E.D. Ky. Sept. 20, 2021) ....................................................16

*Zahuranec v. CIGNA Healthcare, Inc.*,
2020 WL 7335286 (N.D. Ohio Dec. 14, 2020) ..................................................21

*Zahuranec v. CIGNA Healthcare, Inc.*,
2021 WL 2665754 (N.D. Ohio June 29, 2021), *aff'd*, 2022 WL 1619493 (6th
Cir. May 23, 2022) ............................................................................................22

## Statutes

9 U.S.C. § 10(a)(4) .................................................................................................12

9 U.S.C. § 11 ...........................................................................................................3

9 U.S.C § 13(b) .......................................................................................................7

28 U.S.C. § 1331 ...................................................................................................10

28 U.S.C. § 1367 ...................................................................................................11

28 U.S.C. § 2201 ...................................................................................................11

29 U.S.C. § 1144 .............................................................................................14, 23

29 U.S.C. §§ 1332(a)(3) .............................................................................14, 22, 23

42 U.S.C. § 300gg–19(b) .........................................................................................5

All Writs Act, 28 U.S.C. § 1651 ................................................................................3, 11

ERISA § 502 ......................................................................................5, 13, 23, 24, 25

ERISA § 514(a) (29 U.S.C. § 1144(a)).....................................................................14, 23

Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ...............................3, 4, 9, 11, 12, 25, 26

Patient Protection and Affordable Care Act .................................................................5

**Other Authorities**

29 CFR § 2590.715-2719A(b)(3)(i)...........................................................................5

80 Fed. Reg. at 72,213 ..............................................................................................5

## Overview

Cigna HealthCare of Tennessee, Inc. ("Cigna") submits this Application to vacate in part and enjoin the enforcement in part of two "Partial Final Awards" (the "Awards") entered by an arbitration panel (the "Panel") in an ongoing arbitration (the "Arbitration") between Cigna and Baptist Memorial HealthCare Corporation ("Baptist"). The First Partial Award was issued in September 2022 and the Second Award in July 2023. As set forth below, the Panel's challenged determinations violate ERISA, exceed the Panel's delegated authority under the parties' Arbitration Agreement, and are against the manifest weight of the law.

The parties agreed that the "question to be decided in this [A]rbitration is whether Baptist was *properly reimbursed* for [specific instances of emergency service from Baptist to Cigna members] and if not, what is the amount Cigna owes." (Ex. 1, Arbitration Agreement, ¶ 5.) The Panel correctly determined in the First Partial Final Award (after a month-long hearing) that Cigna did not violate ERISA in administering payment claims submitted by Baptist for emergency services. But having ruled in Cigna's favor on ERISA, the Panel decided (wrongly) that bedrock ERISA law changed during this dispute and no longer preempted state common-law remedies. It announced in the First Partial Award that it would apply the state common-law equitable remedy of "quantum meruit" to award Baptist relief, despite that the Tennessee Court of Appeals has ruled that the quantum meruit remedy is flatly not available in Tennessee in these exact circumstances. *HCA Health Services of Tennessee, Inc. v. BlueCross Blue Shield of Tennessee, Inc.*, 2016 WL 3357180, at *6-7, *9-12 (Tenn. Ct. App. June 9, 2016). Both exceeding its authority and manifestly disregarding the law, the Panel outright declared that the on-point and governing Tennessee state court decision in *HCA Health Services* was "wrongly decided." It then held an entirely new evidentiary hearing and issued the Second Partial Award, in which it incorporated

and effectuated the First Partial Award.

To top it off, just four weeks ago, this Court addressed the exact same type of case against Cigna. *AMISUB (SFH), Inc. v. Cigna Health and Life Ins. Co.*, No. 2:21-cv-02308, ECF 110 at 8-10 and 15-17 (W.D. Tenn. July 11, 2023) (Fowlkes, J.) (relying on *HCA Health Services*, 2016 WL 3357180) ("*AMISUB*," attached as Ex. 2). Just as in *HCA Health Services*, the Court dismissed an out-of-network hospital's quantum meruit claim for emergency services. The Court expressly endorsed and applied the binding Tennessee Court of Appeals decision in *HCA Health Services*. The law is both that the quantum meruit remedy is not available where, as here, plaintiffs seek to assert a claim for payment of emergency services and ERISA would preempt such a remedy anyway.

This is the rare but clear case where the Court should vacate an arbitration award and enjoin its enforcement. The Court should award the following relief:

**(i)     Vacate (in part), modify, and enjoin enforcement of Awards under ERISA preemption.** ERISA preempts the remedy the Panel created in the First Partial Final Award and incorporated and applied with effect in the Second Partial Final Award.

**(ii)     Vacate (in part), modify, and enjoin enforcement of Awards for exceeding authority.** The Panel exceeded its limited authority in both Awards by ignoring ERISA preemption, creating and applying a new remedy beyond its delegated power, declaring the directly-on-point 2016 decision of the Tennessee Court of Appeals "wrongly decided" and effectively refusing to apply applicable Tennessee and federal law.

**(iii)     Vacate (in part), modify, and enjoin enforcement of Awards for acting in manifest disregard of the law.** The Panel acted in manifest disregard of the law for multiple reasons, encapsulated above. Its decision to create and apply a quantum meruit remedy flies in the

face of clearly established precedent.

### Power to Issue Requested Relief

This Court has the power to issue a partial vacatur in these circumstances and in the form requested by Cigna here.  Some Sixth Circuit authority suggests the Court may lack the power to issue a "partial" vacatur, though the authority is mixed.  Either way, the Court has authority under the FAA to modify an award, which ought to suffice to grant this relief given that the Panel "awarded upon a matter not submitted to them[.]"  9 U.S.C. § 11(b).  A modified award here would "effect the intent" of "and promote justice between the parties."  9 U.S.C. § 11.  Authority to issue a partial vacatur should also arise in these circumstances from the All Writs Act, 28 U.S.C. § 1651, and the ERISA preemption provisions described below.  If the Court nevertheless were to find that it lacks authority to issue a partial vacatur, then it should suffice to vacate the Second Partial Award in its entirety, which expressly "incorporated" (and thus revivified) the First Partial Award.  The First Partial Award issued no actual substantive relief.  If the Court has no power other than to vacate the Awards entirely, then that is what Cigna requests.

### Factual Background

**A.    The Arbitration Agreement**

Cigna is the defending party in the Arbitration.  Baptist is the complaining party.  Cigna arbitrated on behalf of itself and its affiliates within "The Cigna Group."  Baptist is a Tennessee nonprofit corporation operating a Memphis hospital system.  The parties set forth the binding terms of the Arbitration in the Arbitration Agreement.  By the parties' express agreement, the Federal Arbitration Act ("FAA") provides the standard of review over decisions by the Panel, including the "manifest disregard" principle. (Ex. 1 ¶ 25.)  The Arbitration Agreement directs that applicable federal law or state law (depending on the issue) provide the substantive law governing the

proceedings.  (*Id.*)  The parties agreed that Tennessee state law would govern state law issues.

**B.    The Dispute**

The Arbitration Question of whether Baptist was "properly reimbursed" by Cigna applies to roughly 16,000 "claims" between 2013-2019 when Baptist provided emergency medical services to patients whose health benefit plans were administered by Cigna ("Cigna members"). Baptist received payment before the Arbitration on those claims.  It seeks more money.  Cigna's position is that Baptist was "properly reimbursed."

In the vast majority of the instances at stake, Cigna was not itself funding benefit coverage to the patients.  It was instead providing administrative services to the patients' employers in processing healthcare claims for which the employees sought coverage from their employers under ERISA-governed benefit plans (which employers, in turn, were clients of Cigna).  Funding for payment of these claims comes from employer accounts.  These arrangements are governed by ERISA, except in rare ERISA-exempt instances where the employer was a government entity or charity (in which case state contract principles are at stake).

This is a voluntary arbitration.  Baptist was not in Cigna's contracted provider network for the claims at stake.  In such circumstances, payment to an "out of network" provider like Baptist comes from the *employer* account as part of the member's coverage, or from the members themselves for either a cost-share (e.g., a copayment) required under the benefit plan or the balance of the bill.  Cigna is not responsible for funding payment in any of those circumstances.  Cigna provides administrative services only under contracts with the employers.

Baptist brought three relevant causes of action to try to show it was not "properly reimbursed."  In order pertinent to this Application:

- **ERISA (for claims covered by ERISA) (Count IV).**  The overwhelming majority

of claims were subject to Count IV, asserting "adverse benefit determinations." Baptist argued under ERISA § 502(a)(1)(B) that Cigna should be required under ERISA to pay additional amounts for situations where the payment was not made consistently with the terms of the members' employer benefit plans or otherwise violated federal law.

- **Breach of Contract (for claims not covered by ERISA) (Count I).** Count I was a parallel cause of action for breach of contract. It is essentially the same as Count IV, except it applies to a minority of situations where claims are exempt from ERISA—for example, where the employer is a state entity, a religious group, or a charitable organization. The gist was also that Cigna should be required to pay additional money (beyond what Baptist already received) for situations where a claim was not paid at amounts allegedly required by the members' benefit plans.

- **Quantum meruit (in the alternative) (Count II).** Count II invoked the equitable remedy of quantum meruit. Baptist alleges Cigna should have to pay a "reasonable" amount to Baptist for the services that Baptist provides to Cigna members (even though the vast majority of situations involve ERISA-governed coverage funded by the employers). Baptist argued that what it had already received was not reasonable (even though it met the objectively reasonable federal GOT test under ERISA), and alleged that Cigna (not employers and not members) should directly pay the additional amounts under a quantum meruit remedy up to the point where the amount is "reasonable" under quantum meruit. Baptist originally sought the quantum meruit remedy only as an alternative to the *non-ERISA* claims at stake in Count I (breach of contract). At the time the case was filed—and endemic to the circumstances in which the Arbitration began—everyone understood that ERISA would preempt a quantum meruit cause of action as to healthcare reimbursement claims subject to Count IV (cause of action under federal ERISA law). With the

Panel's permission, and over Cigna's objection, Baptist later amended Count II also to apply to the claims otherwise governed by ERISA.

The Arbitration has been administered over several "phases."  Two phases occurred in 2021 and 2022, another in 2023, an additional is scheduled for December 2023, and at least one more is expected.  A final decision on the extent of the full relief owed is not expected until 2024.

**C.      The First Partial Final Award (September 7, 2022)**

On September 7, 2022, the Panel issued the First Partial Final Award, a decision that addressed certain, but not all, of the issues.  A partially redacted copy is attached as Ex. 3.  The Panel ruled *against* Baptist and *for* Cigna on the ERISA cause of action (and breach of contract in Count I).  The Panel determined that Cigna did not administer claims in violation of ERISA and that Baptist could not establish an unlawful denial of benefits under ERISA.  (Ex. 3 at 63, 75, 90.) The Panel also separately determined that Baptist failed to prove that Cigna violated the ERISA-mandated GOT rule that required objectively reasonable payments.  (*Id*. at 76, 90.)

The Panel nonetheless permitted an *expanded* Count II cause of action to determine whether the payments were "reasonable" as a matter of Tennessee state law under the equitable remedy of quantum meruit—even for the claims governed by ERISA and compliant with ERISA. The Panel believed (wrongly) that a 2022 decision by the Supreme Court in *Rutledge v. Pharm. Care Mgmt. Ass'n,* 141 S.Ct. 474 (2020), eliminated ERISA preemption for this situation (a preemption view this Court has determined is wrong).  The Panel took this step despite being acutely aware there was directly-on-point precedent from the Tennessee Court of Appeals that quantum meruit is *not* available under these *exact* circumstances—both because ERISA preempts it *and* because that remedy does not apply in a claim by a hospital seeking payment from a claims administrator for services provided to the administrator's members.  *HCA Health Services of*

6

*Tennessee, Inc. v. BlueCross Blue Shield of Tennessee, Inc.*, 2016 WL 3357180, at *6-7, *9-12 (Tenn. Ct. App. June 9, 2016).  The Panel pronounced that the 2016 binding decision was "wrongly decided" in its view and it flatly refused to enforce it.  (Ex. 3 at 82.)  The Panel took that action notwithstanding the choice of law set out in the Arbitration Agreement and the limits of its authority.

But the Panel did not determine in the Final Partial Award whether payments made to Baptist were actually unreasonable.  It only found the quantum meruit remedy available.  The case proceeded to a next phase to determine whether any actual additional payment would be due under the Panel's invocation of quantum meruit.

**D.    The Protective State Court Filing (Where No Award Has Yet Been Made)**

The Panel designated the First Partial Final Award with "Final" and "Award" in the title. It did so despite that it issued no damages award and despite that it did not yet conclude that Baptist was owed any money.  The award to Baptist was in a later phase of the case, but that is still not final since a phase of the case still remains.  The Panel left for the further proceeding (leading to the Second Award) to determine whether the quantum meruit remedy would actually afford any relief.  It directed the parties to address the question anew of whether quantum meruit afforded any relief—like a "start over" proceeding (it even used equivalent terms).  It used the "Final" title despite provisions in the Arbitration Agreement making clear that no challenge to any of its decisions should be issued until after a "final" hearing that ultimately results in the conclusion of all issues.  (Ex. 1 ¶¶ 12, 13, 16.)  Cigna approached the Panel to question the use of these labels, because the "Final" designation gave rise to substantial concern on Cigna's part that the 90-day timeline to challenge the Award under the FAA might begin to run.  Even though arbitration is designed to be a more efficient process than typical court litigation, the Panel denied Cigna's

request to refashion the label.

This left Cigna in a conundrum.  No award issued any actual relief against it to that point. It had prevailed on ERISA, it yet suffered no injury, the Panel had not yet determined that Baptist was improperly reimbursed under state law, and the Panel ordered a "fresh start" second proceeding.  That means Cigna could have no Article III standing in a federal court.  *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 860-67 (6th Cir. 2020); *see also Greenhouse Holdings, LLC v. Int'l Union of Painters & Allied Trades Dist. Council 91*, 43 F.4th 628, 631 (6th Cir. 2022) (a "party can challenge only a 'final' award" and "an award is final only if it determines both liability and damages"); *Dealer Comput. Servs., Inc. v. Dub Herring Ford*, 547 F.3d 558, 564 (6th Cir. 2008) (motion to vacate not ripe because "the potential harm to" the arbitrating party from an interim award "may never occur").  The Panel's refusal to amend the title left Cigna in danger of waiving its right to challenge the Panel's impermissible actions.

Cigna therefore made a protective filing in Tennessee state court to challenge the First Partial Final Award, and then moved to stay that proceeding pending at least the next phase of the Arbitration.  Cigna made clear in that filing its view that the First Partial Final Award was not an actual final arbitration award that could be challenged, but was filing the petition out of a necessary abundance of caution.  That proceeding remains on file.  No material action has occurred, and Cigna will promptly seek a stay in light of this filing.

**E.    The Second Partial Final Award (July 11, 2023)**

The Arbitration proceeded to the fresh-start evidentiary hearing on whether Baptist could recover additional sums under the newly minted quantum meruit remedy that the Panel permitted to go forward.  The Panel issued its Second Partial Final Award on July 11, 2023.  The Panel expressly "incorporated" its prior decision that permitted Baptist to seek the quantum meruit

remedy, thus revivifying it.  (Second Partial Award at 2.)  After a five-day evidentiary hearing, the

Panel determined that the quantum meruit remedy would permit Baptist to recover additional funds

from Cigna as objectively reasonable payment (in some cases more than doubling amounts already

paid in compliance with ERISA).  The parties have to undergo another proceeding to determine

the actual monetary value of the remedy, and to address other matters still in dispute.

## Jurisdiction

There are certain jurisdiction implications arising out of the Supreme Court's decision in

*Badgerow v. Walters*, 142 S.Ct. 1310 (2022).  Those matters are inextricably intertwined with the

ERISA issues and are addressed in Argument I.D below.

The Court has federal question jurisdiction under 28 U.S.C. § 1331 because the matter

turns on and gives rise to a substantial federal question under ERISA, is independently subject to

equitable relief directly under ERISA, and is completely preempted by ERISA, as thoroughly

discussed in Arguments I.A-C below.  There could be no enforcement or vacatur of the Awards

without grappling with multiple and substantial federal questions.  The Supreme Court has ruled:

> [T]he district court has jurisdiction if the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another, unless the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 643 (2002) (cleaned

up).  As applied to this context:

> Here, resolution of [Cigna's] claim turns on whether [ERISA] … precludes the [Panel] from ordering payment [under quantum meruit], and [as will be shown] there [can be] no suggestion that [Cigna's] claim is "immaterial" or "wholly insubstantial and frivolous."

*Id.* (cleaned up); *see also Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S.

308, 316 (2005) (jurisdiction arises where "it is plain that a controversy respecting the construction and effect of the federal laws is involved and is sufficiently real and substantial").

Cigna has justiciable standing at this time under Article III because the Panel has issued Awards that encompass both liability and an actual and tangible remedy.  Interstate commerce is involved because Cigna administers claims for employers nationwide and conducts its business out of its affiliated entities in myriad states.  The All Writs Act, 28 U.S.C. § 1651, should also supply the Court with authority to enter an order partially vacating the First Award for violation of ERISA.  Under its jurisdiction, the Court may declare rights and remedies under 28 U.S.C. § 2201(a) and pursuant to the Federal Arbitration Act.  This Court has supplemental jurisdiction under 28 U.S.C. § 1367 to address the matters of Tennessee state law described below.

### **Standard of Review**

The FAA sets forth the grounds for vacating an arbitration award, including "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).  The scope of an arbitrator's authority is determined by the terms of the agreement between the parties and applicable law.  Arbitrations may only proceed on issues consistent with the terms and scope of the parties' agreement to arbitrate.  *Augusta Cap., LLC v. Reich & Binstock, LLP*, 2009 WL 2065555, at *4 (M.D. Tenn. July 10, 2009).

Vacatur of an award is an appropriate remedy where arbitrators exceed their contractual authority or where the arbitration award was made in manifest disregard of the law.  Modification of an award is proper as set out on page 3 above.  An arbitrator acts in manifest disregard of the law where (i) the applicable legal principle is clearly defined and not subject to reasonable debate;

and (ii) the arbitrator refused to heed that legal principle. *Coffee Beanery, Ltd. v. WW, L.L.C.*, 300 F. App'x. 415, 418 (6th Cir. 2008) (citing decisions); *Nationwide Mut. Ins. Co. v. Home Ins.*, 330 F.3d 843, 847 (6th Cir. 2003); *Henson v. Morgan Stanley DW Inc.*, 2005 WL 1806426, at *3 (M.D. Tenn. June 7, 2005). An arbitrator evinces manifest disregard for the law where a decision "*fl[ies] in the face of clearly established legal precedent*." *Coffee Beanery*, 300 F. App'x at 418.

## Argument

Baptist has not challenged the Panel's ruling in the First Arbitration Award that rejected its ERISA claim. That aspect of the decisions thus stands—meaning Cigna did not violate ERISA. Nor did Cigna violate the greatest-of-three rule. As for the remaining portions of the Awards, they should be vacated as follows.

**First**, the Panel refused to apply mandatory ERISA preemption. ERISA preempts the quantum meruit remedy the Panel created under state law, and any aspects of the Awards holding otherwise should be vacated and enjoined from enforcement. This rule of preemption is established by governing federal cases (including in this District) and the Tennessee Court of Appeals. It would transgress ERISA for this Award to be applied and for money to be collected from a claims administration company (Cigna) where the funding for the healthcare services comes from the employer benefit plans under ERISA-governed law. *Rutledge* did not change the overwhelming preemptive force of ERISA. *Badgerow* and its progeny confirm the continued and forceful application of federal jurisdiction here. On top of all that, Cigna merely administers claims under separate contracts with employers that fund claims under ERISA-governed benefit plans. Section 502(a)(3) of ERISA also empowers Cigna to bring a claim for equitable relief to enjoin the enforcement of the Awards.

**Second**, the Panel exceeded its authority. Its limited powers derived from the Arbitration

Agreement, which required it to apply federal and Tennessee law to answer the question whether Baptist was properly reimbursed.  Federal and Tennessee courts have made explicit that ERISA preempts in this exact circumstance.  Tennessee law does not supply the quantum meruit remedy the Panel imposed—including in directly-on-point decisions from before and after the initiation of the Arbitration.  The law thus is clear, firm, and conclusive both that ERISA preempts the quantum meruit remedy and that no such cause of action for quantum meruit exists in Tennessee.  The parties did not grant the Panel any authority to ignore their choice of law, to create its own extra-legal remedy, or to declare a directly-on-point decision of the Tennessee Court of Appeals "wrongly decided" (as the Panel did).

**Third**, for many of the same reasons, the Panel's rulings are in manifest disregard of the law.  There is clearly established precedent explicitly foreclosing the Panel's rulings under ERISA and Tennessee state law.  It is difficult to conceive of a clearer case of a decision in manifest disregard of the law.

## I.    ERISA Preempts and Invalidates the Panel's Creation and Imposition of a Non-Existent Quantum Meruit Remedy.

As explained, the Panel determined ERISA applied and that Cigna had not violated it.

### A.    ERISA preempts the quantum meruit remedy the Awards would impose.

Most of Cigna's business at stake in the Arbitration consists of administering health care claims under ERISA plans on behalf of employers.  Employers fund the payments but have no legal obligation to pay beyond what is called for under the plans.  Courts for decades have ruled that plaintiffs cannot pursue state common-law claims that would require a court to rewrite the terms of an ERISA plan—i.e., to determine what must be paid—in effect what is happening here.

ERISA preempts state law remedies that conflict with its provisions.  29 U.S.C. 1144(a). ERISA's remedial scheme empowers courts to issue equitable relief against ERISA violations.  29

U.S.C. §§ 1332(a)(3).  The "Sixth Circuit has recognized that 'virtually all state law claims relating to an employee benefit plan are preempted by ERISA.'"  Ex. 2, *AMISUB* at 14 (quoting *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991)).  The Sixth Circuit has a broad "'liberal approach' in finding the existence of ERISA preemption[.]"  *Duncan v. Unum Life Ins. Co. of Am.*, 615 F. Supp. 3d 785, 792 (M.D. Tenn. 2022).  A "state law may therefore be preempted even if the law is not specifically designed to affect [ERISA] plans, or the effect is only indirect."  *Aldridge v. Regions Bank*, 2021 WL 4718489, at *6 (E.D. Tenn. Oct. 8, 2021) (quoting *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 861 (6th Cir. 2007)).  Preempted state-law theories include ones that "provide for the payment to beneficiaries or their assignees under ERISA-governed employee benefit plans[.]"  *Select Specialty Hosp.-Memphis, Inc. v. Trustees of Langston Companies, Inc.*, 2020 WL 4275264, at *13 (W.D. Tenn. July 24, 2020) (cleaned up).  Quantum meruit remedies seeking such payments are thus preempted by ERISA.  *Air Trek, Inc. v. Cap. Steel & Wire, Inc.*, 2019 WL 4873401, at *9-10 (W.D. Mich. Oct. 2, 2019).

A state-law claim is preempted if it "relate[s] to" an employee benefit plan—that is, if it "has a reference to" or "an impermissible connection with ERISA plans."  *Gobeille v. Liberty Mut. Ins.*, 577 U.S. 312, 319-20 (2016).  State-law claims relate to "ERISA plans if they: '(1) mandate employee benefit structures or their administration; (2) provide alternate enforcement mechanisms; or (3) bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself' or otherwise seek a remedy that is 'primarily plan-related.'"  *Aldridge*, 2021 WL 4718489, at *6 (quoting *Thurman*, 484 F.3d at 861).  All three apply here.

➤     Quantum meruit recovery would direct and mandate employee benefit structures and their administration, rather than ERISA.  There is no legitimate dispute here.  Baptist's

"quantum meruit claim, if successful, would affect the manner of administration of the Plan[.]" *Air Trek*, 2019 WL 4873401, at *10 (quantum meruit claim of out-of-network provider of emergency services preempted).  As part of claims administration (and as the Panel was informed), Cigna must first determine whether the claims asserted involved any valid denials and then it must determine whether the covered services were properly reimbursed in accordance with the specific plan terms.  For ERISA plans, those determinations will require interpretation of plan terms and therefore "relate to" the plans, so those claims are preempted.  Ex. 2, *AMISUB* at 17; *Cole v. Am. Specialty Health Network, Inc.*, 2015 WL 1734926, at *3 (M.D. Tenn. Apr. 16, 2015) (claims preempted "reimbursement for allegedly … underpaid benefits, which would require the [court] to interpret the terms of Cigna's plans to determine whether additional payments were warranted").

➢      Quantum meruit recovery would provide an impermissible alternative enforcement mechanism.  *Air Trek*, 2019 WL 4873401, at *10 (out-of-network emergency service provider's quantum meruit claim preempted because it would provide an alternative enforcement mechanism to ERISA) (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 217 (2004)).  The Panel found that Baptist did not prevail under ERISA.  Yet the Panel held that the alternative mechanism of Tennessee quantum meruit law mandated further payments for the same services provided to the same members that Baptist sought through ERISA.  Baptist alternatively sought what it labeled a "quantum meruit" claim, but re-characterizing an ERISA claim "does not change the relief being sought[.]" *Wilson v. Unum Grp.*, 2021 WL 4268046, at *4 (E.D. Ky. Sept. 20, 2021); *see also* Ex. 2, *AMISUB* at 14.

➢      Quantum meruit recovery would bind Cigna to particular choices and preclude uniform administrative practice.  The "policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-

14

plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *McCammon v. Dollywood Found.*, 2023 WL 2637411, at *3 (E.D. Tenn. Mar. 24, 2023) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987)). The Panel found that Cigna *complied* with ERISA. The Panel also determined that Cigna did not violate the federal law provision requiring that payments made to Baptist from benefit plans be "objectively reasonable." Yet the Panel held that Cigna was required to pay additional funds. Such quantum meruit recovery would require Cigna to "calculate benefit levels in [one state] based on expected liability conditions that differ from those in" other states. *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins.*, 514 U.S. 645, 657-58 (1995) (cleaned up). It would also require "benefits in excess of what the plan provided … in other [s]tates." *Id.* at 658. And it would prevent Cigna from "using a method of calculating benefits permitted by federal law." *Id.* The Supreme Court is clear that in "each of these cases, ERISA pre-empt[s] state laws[.]" *Id.*

The Tennessee Court of Appeals addressed this exact issue in *HCA Health Services*, 2016 WL 3357180, at *7, where it determined that ERISA preempted the quantum meruit claims that the provider sought to bring. There is no basis to conclude that ERISA could or should operate differently here. At bottom, the circumstances here fall squarely within overwhelming authority that ERISA must preempt the outcome and enjoin the enforcement or application of the state law remedy embodied in the award.

This Court agreed in *AMISUB*. And a prior court in this District reached effectively the same conclusion in *Cole*. (These decisions are discussed throughout these papers and are not reiterated in detail here.)

**B.  *Rutledge* does not change ERISA preemption of quantum meruit.**

The Supreme Court issued *Rutledge* during the Arbitration. The Panel (incorrectly)

determined that *Rutledge* undid decades of precedent and permitted Baptist to seek a quantum meruit remedy against the claims administrator (Cigna) where the employer was providing coverage under benefit plans governed by ERISA. But *Rutledge* did not change long accepted law in the middle of this dispute. Baptist properly excluded claims governed by ERISA from its initial arbitration ERISA cause of action in Count IV. The Panel's decision that ERISA no longer preempts quantum meruit claims would rewrite this bedrock ERISA framework through an impermissible misreading and misapplication of *Rutledge*.

*Rutledge* did not involve out-of-network providers seeking reimbursement from an ERISA administrator. Nor did *Rutledge* concern preemption of common-law claims (let alone quantum meruit claims specifically). *Rutledge* instead concerned an Arkansas state statute that set a floor on reimbursement rates between pharmacy benefit managers ("PBMs") and pharmacies. *Rutledge*, 141 S.Ct. at 482. PBMs are intermediaries that negotiate rates with pharmacies and reimburse them on behalf of benefit plans. Plans then reimburse PBMs at higher rates to compensate the PBMs for their negotiation services. The Supreme Court ruled that ERISA did not preempt the state regulation because the regulation merely increased the costs that ultimately accrue to plans through an intermediary, which is an insufficiently close "connection with" ERISA plans to trigger ERISA preemption. *Id.* at 480. The Court distinguished the Arkansas statute from laws "requiring payment of specific benefits" under an ERISA plan, which the Court expressly stated remain preempted. *Id.*

ERISA has never allowed health care providers to pursue a state common law remedy as an *alternate enforcement* mechanism. The ten-page opinion in *Rutledge* did not implicitly overrule decades of precedent. *Rutledge* simply built on the well-established framework that ERISA does not preempt laws that only *indirectly* affect plan *costs* (not at issue here). The Court in *Rutledge*

reiterated that the only impact on the plans is that the PBMs "may" pass along the higher costs from Arkansas's rate regulations to the plans. *Id.* at 480-82.

That is very different from the quantum meruit claim here, which would act *directly* on the plans themselves.  For self-funded plans, Cigna is not financially responsible for funding self-funded benefits.  It merely administers the claims seeking plan benefits and pays providers from the plans' bank accounts.  *Gobeille*, 577 U.S. at 317 (the "Plan is self-insured and self-funded, which means that Plan benefits are paid by [the Plan]"); *Henretta v. Chrysler Motors Corp.*, 977 F.2d 595, at *2 (10th Cir. 1992) ("A 'self-funded plan' pays all benefits itself.").

Cigna does not pass along any additional costs—the plans themselves directly pay any increases to Baptist's reimbursement.  Unlike in *Rutledge*, where PBM intermediary costs may indirectly lead to increased costs on the ERISA plan, Baptist's claims attempt to supplant the written ERISA plan terms for out-of-network benefits coverage and reimbursement with new terms based on Tennessee common law that Baptist contends impose some "reasonable value" for emergency services.  But "payment of benefits" is a "central matter of plan administration." *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 148 (2001).  Obligations undertaken with plan administration include "calculating benefit levels [and] making disbursements[.]" *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987); *see also Rutledge*, 141 S.Ct. at 480 ("ERISA is ... primarily concerned with pre-empting laws that require providers to structure benefit plans in particular ways, such as by requiring payment of specific benefits").  The quantum meruit claim permitted by the Panel here would do exactly that, replacing plan terms for benefits for out-of-network emergency services and requiring different, specific benefits to be paid to providers.  This directly affects the administration of ERISA plans, and thus ERISA preempts Baptist's claims just as much now as it did before *Rutledge.  See Gobeille*, 577 U.S. at 320 (state-law claims are

17

preempted when they "govern[] ... a central matter of plan administration").

This District has expressly determined that ERISA preemption remains in full force for these exact circumstances in the State of Tennessee. The recent *AMISUB* decision provides:

> There is a clear distinction between the issues in *Rutledge* and the issues before the court in this matter. […] The state law that regulated the reimbursement rate in *Rutledge* affected non-ERISA plans in the same way it affected ERISA plans. In that way, the state law did not have an impermissible connection with an ERISA plan. [*Rutledge*] at 481. Therefore, ERISA did not preempt that law.

> By contrast, the state law claims in this matter would affect self-funded plans directly. Plaintiffs are questioning Cigna's reimbursement rate. If Plaintiffs' claims were allowed to move forward, they would ultimately be allowed to recover from an entity that directly administers self-funded plans. The facts in this case do not involve a state law or claim that would indirectly affect ERISA plans. Here, the state law claims would require the Court to interpret reimbursement procedures and rates of the self-funded plans themselves rather than the policy of an intermediary, as was the case in *Rutledge*. Thus, the Court finds that Plaintiffs' claims directly relate to self-funded plans governed by ERISA, and such claims shall be DISMISSED.

Ex. 2, *AMISUB* at 18.

Baptist is likewise "questioning Cigna's reimbursement rate" under a quantum meruit state-law claim that "would require the Court to interpret reimbursement procedures and rates of the self-funded plans themselves." *Id*. *AMISUB* reaffirmed that ERISA preempts where an underlying employer (i.e., a Cigna client) was providing coverage under benefit plans governed by ERISA. Those claims remain preempted under ERISA.

**C.  Baptist's quantum meruit claim is completely preempted by ERISA.**

ERISA also completely preempts Baptist's quantum meruit cause of action (which both establishes federal question jurisdiction and reinforces why the Panel's decisions must be vacated). Federal law "may so completely pre-empt a particular area" that even certain purported state-law claims are "necessarily federal in character." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64

(1987); *see also Progressive Ins. Co. v. Blue Cross Blue Shield of Michigan*, 2019 WL 3342922, at *2 (E.D. Mich. July 25, 2019) (same).  "Under 'complete preemption,' 'any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.'"  *Gray v. Metro. Life Ins.*, 2019 WL 13195296, at *3 (E.D. Tenn. Dec. 9, 2019) (quoting *Davila*, 542 U.S. at 209).  ERISA provides for remedies for purported underpayments, "so any state law claim that granted relief for [those] breaches would duplicate, supplement, or supplant the ERISA civil remedies."  *Girl Scouts of Middle Tennessee, Inc. v. Girl Scouts of the U.S.A.*, 770 F.3d 414, 419 (6th Cir. 2014) (cleaned up).  Claims against a "plan administrator are more likely to be duplicative of ERISA's enforcement mechanism[.]"  *Milby v. MCMC LLC*, 844 F.3d 605, 611 (6th Cir. 2016).  A "completely preempted state law claim is … converted to a federal claim."  *Gray*, 2019 WL 13195296, at *5.

Courts evaluate ERISA complete preemption under a two-part test.  First, courts ask whether the claim is "about the denial of benefits … because of the terms of an ERISA-regulated employee benefit plan[.]"  *Palagyi v. Canada Nat.*, 2013 WL 5519654, at *2 (N.D. Ohio Oct. 2, 2013) (cleaned up).  "To answer [that] first question, courts look beyond the label placed on a state law claim and ask whether in essence such a claim is for the recovery of an ERISA plan benefit."  *Gray*, 2019 WL 13195296, at *3 (cleaned up).  That first requirement is met "when a claim generally 'falls within the scope' of Section 1132(a)(1)(B), including when" the plaintiff "seeks to enforce [its] rights under the Plan."  *Zahuranec v. CIGNA Healthcare, Inc.*, 2020 WL 7335286, at *12 (N.D. Ohio Dec. 14, 2020).  Second, courts ask whether the claim points to a recognized "violation of any legal duty (state or federal) independent of ERISA or the plan terms[.]"  *Palagyi*, 2013 WL 5519654, at *2.  That second requirement is met if the claim "would not exist if the

ERISA plan did not exist." *Id.*

Both requirements for ERISA complete preemption apply here. First, Baptist's quantum meruit claim seeks the same recovery, based on the same provision of medical services, to the same ERISA plan members, from the same ERISA plan administrator (Cigna) that Baptist sought in its expressly pleaded ERISA claim by standing in the shoes of the ERISA plan member via assignment. There is thus no question that Baptist's quantum meruit claim is a disguised ERISA claim. Second, Baptist's quantum meruit claim against Cigna would not exist unless Cigna was the ERISA claims administrator for the ERISA plan members in question—that is the only connection Cigna has to Baptist. There is no allegation that Cigna gave some separate promise to Baptist that established some independent duty.

At bottom, complete preemption is about an impermissible repackaging of ERISA claims as state-law claims. "Impermissible repackaging is implicated whenever, in addition to the particular remedy provided by Congress, a duplicative or redundant remedy is pursued to redress the same injury." *Zahuranec v. CIGNA Healthcare, Inc.*, 2021 WL 2665754, at *11 n.8 (N.D. Ohio June 29, 2021) (quoting *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 373 (6th Cir. 2015)), *aff'd*, 2022 WL 1619493 (6th Cir. May 23, 2022). There is no clearer example of impermissible repackaging than Baptist's quantum meruit claim. If Baptist received proper payments under ERISA, then it was not improperly reimbursed.

### D. *Badgerow* and progeny reaffirm the federal jurisdiction here under ERISA to preempt and vacate the Awards.

There should be no uncertainty about the scope of federal question jurisdiction for matters like this since the Supreme Court's 2022 *Badgerow* decision. The Court ruled in *Badgerow* that federal question jurisdiction cannot be based on a "look-through" approach that is "highly unusual" in that it "locates jurisdiction not in the action actually before the court[.]" *Badgerow*, 142 S.Ct.

at 1318.  Courts must instead "follow the normal rules" and look to the face of the application (like this Application here) to determine jurisdiction.  *Id.* at 1316, 1322.  Just as has long been the case, there is federal question jurisdiction where resolution of the dispute necessarily requires resolution of a federal question.  *Id.* at 1322.

A claim like this one that an arbitration award is preempted by ERISA and otherwise violates federal law meets all the requirements for federal jurisdiction.  The key assertions are that ERISA § 514(a) (29 U.S.C. § 1144(a)) preempts the remedy that the Panel created, and that ERISA's remedial scheme under §§ 502(a)(3) and 502(e)(1) empowers courts to issue equitable relief against ERISA violations.  Applying the Supreme Court's explanation of federal jurisdiction in *Verizon*, there is also federal jurisdiction here because "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another[.]"  *Verizon*, 535 U.S. at 643.

The conclusion that ERISA supplies jurisdiction under *Badgerow* in these circumstances was the holding in *Trustees of New York State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*, 2022 WL 2209349 (S.D.N.Y. June 20, 2022).  That case involved a petition to confirm an ERISA arbitration award and a corresponding motion to vacate.  *Id.* at *1.  The court recognized that ERISA provided a "comprehensive statutory scheme" that "created a uniform national law governing employee benefit plans[.]"  *Id.* at *4.  The "very purpose of ERISA is to provide a uniform regulatory regime[.]"  *Id.* (cleaned up).  The federal scheme "remov[ed] [ERISA] plans from the traditional domain of state regulation."  *Id.*  "ERISA's expansive preemption provisions … are intended to ensure that employee benefit plan regulation would be exclusively a federal concern."  *Id.* (cleaned up).  The expansive federal common law reach over ERISA-related disputes "follows from Section 514 of the statute, which provides that ERISA shall

21

'supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan.'" *Id*. at \*4 (quoting 29 U.S.C. § 1144(a)).  "A claim under state law is deemed to *relate to* an employee benefit plan" and is therefore preempted "so long as that law has any connection with or reference to such a plan." *Id*. (cleaned up).  The court thus held that "questions of dispute resolution relating to an ERISA Plan including those concerning arbitration are governed exclusively by the federal statutory and common law federal courts have developed for ERISA." *Id.* at \*5.  It was thus "plain from the face of the … petition," like this Application, "that the [issues] before the court 'relate to' an ERISA plan and [were] governed by federal law."  *Id*.

The *Trustees of New York* court also held that ERISA § 502(a) independently established jurisdiction, which also applies here.  ERISA § 502(a)(3) authorizes any ERISA "participant, beneficiary or fiduciary" to bring a civil action "to obtain … appropriate equitable relief[.]" *Id.* at \*5 (quoting ERISA § 502(a)(3)).  ERISA § 502(e)(1) "in turn provides that 'the district courts of the United States shall have exclusive jurisdiction' over all such actions." *Id.* (quoting ERISA § 502(e)(1)).  The court held that "confirmation of an arbitration award can be viewed as 'appropriate equitable relief' for redressing an ERISA violation." *Id.* at \*6.  ERISA § 502 therefore provided a jurisdictional hook. *Id.* at \*7.  The same is true here.  This Application seeks to vacate the Panel's decisions on quantum meruit that bypassed ERISA.

Other courts have also found federal question jurisdiction over post-arbitral applications after *Badgerow* when the petition provides the federal issue on its face.  In *San Jose Healthcare Sys., LP v. Stationary Engineers Loc. 39 Pension Tr. Fund*, 2022 WL 2161504, at \*4 (N.D. Cal. June 15, 2022), the court held that under *Badgerow* a court need only "look at the 'face of the application itself' to see if it shows that … federal question jurisdiction exists." *Id.* (quoting *Badgerow*, 142 S.Ct. at 1316).  The court "concluded that it also [had] subject matter

jurisdiction … under ERISA" because, as here, the application brought its "petition under ERISA." *Id.*; *accord Graulau, v. Credit One Bank, N.A.*, 2023 WL 2930957, at *3 (M.D. Fla. Mar. 27, 2023) (similar for other federal issues); *George v. Rushmore Serv. Ctr., LLC*, 2023 WL 3735977, at *2 (D.N.J. May 30, 2023) (same).

The reasoning of these ERISA decisions applies with equal force here.  The Arbitration Agreement here provides that "applicable federal and state substantive law will be applied by the arbitration panel[.]"  (Ex. 1 ¶ 25.)  Federal and statutory common law—not state law—applies to the claims subject to ERISA plans under the Arbitration Agreement.  (Ex. 3, First Partial Award, at 63, 90.)  The Panel rejected Baptist's cause of action for wrongful denial of benefits under ERISA.  (*Id*.)  This Application seeks to vacate that decision imposing an ERISA-preempted remedy through the award.

In the end, the Court need not look through to the underlying arbitration claims here to establish federal question jurisdiction.  Complete preemption is clear from the face of this Application.  And this Application seeks equitable relief under ERISA § 502(a)(3) to enjoin awards in direct conflict with—and completely preempted by—ERISA.

## II.      The Panel Exceeded Its Authority.

Parties may choose the underlying substantive law to govern claims in an arbitration even when the arbitration is otherwise governed by the FAA.  *Metlife Sec., Inc. v. Holt*, 2016 WL 3964459, at *8 (E.D. Tenn. July 21, 2016); *Mid-S. Maint. Inc. v. Paychex Inc.*, 2015 WL 4880855, at *5 (Tenn. Ct. App. Aug. 14, 2015).  The Arbitration Agreement provides that "applicable federal and state substantive law will be applied by the arbitration panel[.]"  (Ex. 1 ¶ 25.)  Federal law under ERISA governs the ERISA issues and is of course the supreme law of the land.  Tennessee law, in turn, applies when it comes to whether a quantum meruit remedy exists under the

circumstances of this case.

An arbitration panel exceeds its authority by creating a remedy inconsistent with an arbitration agreement. *Augusta*, 2009 WL 2065555, at *4; *Totes Isotoner Corp. v. Int'l Chem. Workers Union Council/UFCW Loc. 664C*, 532 F.3d 405, 416 n.3 (6th Cir. 2008). "Ignoring a choice of law provision in an arbitration agreement exceeds [an] arbitrator's power since the arbitrator's power is borne from that arbitration agreement." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 563-64 (7th Cir. 2008). Rejecting the chosen law by providing remedies unavailable under that law would be an "end-run" around the parties' "freely negotiated, bargained for" agreement. *Totes Isotoner*, 532 F.3d at 416 n.3. The prevailing arbitration party would impermissibly receive "a windfall" while the party found liable would be "subjected to remedies … they did not agree to arbitrate." *Id.* Arbitrators may not enter "the forbidden world of effectively dispensing [their] own brand of industrial justice[.]" *Id.* at 418 (cleaned up).

The Panel exceeded its authority here. The parties chose to apply federal law on federal issues and Tennessee law on state issues. The Panel had no authority to disregard the parties' chosen law. As set forth, federal law confirms that ERISA preempts this decision. And as for state law, Tennessee law expressly rejects quantum meruit recovery in these exact circumstances. *HCA Health Services*, 2016 WL 3357180, at *12. The Panel pronounced that the Tennessee Court of Appeals "wrongly decided" the question—but it had no authority to supplant the binding law of the State of Tennessee that the parties directed it to apply. The Panel thus exceeded its authority by creating a remedy and issuing an award not available under Tennessee law. *Totes Isotoner*, 532 F.3d at 416 n.3 (exceeded authority by providing remedy the parties did not agree to arbitrate); *Augusta*, 2009 WL 2065555, at *4 (same); *Missouri River Servs., Inc. v. Omaha Tribe of Nebraska*, 267 F.3d 848, 855 (8th Cir. 2001) (exceeded authority when arbitrator disregarded the parties'

agreement and "craft[ed] her own remedy"); *D & E Const. Co. v. Robert J. Denley Co.*, 38 S.W.3d 513, 520 (Tenn. 2001) (exceeded authority by awarding attorneys' fees unavailable under Tennessee law); *Smith v. Waller*, 1997 WL 412537, at *2 (Tenn. Ct. App. July 24, 1997) (same for attorneys' fees not available in governing contract, under parallel provisions of Tennessee law); *Burka v. New York City Transit Auth.*, 1992 WL 251445, at *5-6 (S.D.N.Y. Sept. 18, 1992) (same for nominal damages not available in governing order governing arbitration); *see also Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 123 (2d Cir. 1991), *distinguished on other grounds*, *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 55 (1995).

The *HCA Health Services* decision is again directly on-point and, when obeyed, confirms the limits of the Panel's authority.  The Tennessee Court of Appeals rejected the proposition that a quantum meruit remedy exists to supply reimbursement to a hospital from a health carrier that is providing administrative services—the exact situation here:

> Applying these elements to the facts of the case, the duty imposed on HCA [like Baptist] by EMTALA and the prohibition imposed on [BlueCross] by Tenn. Code. Ann. § 56-7-2355 do not create an implied-in-law contractual relationship upon which to sustain HCA's cause of action.  HCA has not conferred a benefit on [BlueCross]; the services were rendered to the patients, none of whom are party to this suit, and they are the ones who received the benefits of medical care provided in HCA's emergency rooms and are obligated to pay for the services.

*HCA Health Services*, 2016 WL 3357180, at *12.

The *HCA Health Services* decision is not isolated.  This Court recently issued the *AMISUB* decision.  Not only did that decision uphold ERISA preemption (as discussed in Part I.A-C above), but it soundly reaffirmed the absence in Tennessee of a quantum meruit remedy against a carrier (Cigna) when a hospital provides out-of-network emergency room services. Ex. 2, *AMISUB* at 7-10 (dismissing all claims against Cigna with prejudice).  Expressly relying on *HCA Health Services*, the court held:

After review of the record, it is obvious that when emergency services are provided, the patient directly benefits. The Court does not find that a benefit was conferred upon Cigna. Federal and state law require the Hospitals to render emergency services to anyone appearing at their doors in need of such service. This includes Cigna's insured members. However, when emergency services are provided to Cigna insured members, it is those members who directly benefit, not Cigna. Thus, it does not follow that an implied-in-law contractual relationship under unjust enrichment or quantum meruit exists. *See* [*HCA Health Services*], No. M2014–01869–COA–R9– CV, 2016 WL 3357180 at \*12. Because of this, the Court concludes that Plaintiffs have failed to establish an implied-in-law contractual relationship that would support a claim for quantum meruit, or unjust enrichment. As a result, the Court finds that Plaintiffs' claims for breach of implied-in-law contract based on quantum meruit and unjust enrichment should be DISMISSED.

*Id.* at 10.

Those decisions follow directly from hornbook quantum meruit principles determined by the Supreme Court of Tennessee and other decisions by the Court of Appeals in Tennessee. *HCA Health Services*, 2016 WL 3357180, at \*11-12. Tennessee courts make clear that a quantum meruit cause of action must involve services that were both provided (i) *to the defendant*, and (ii) *by the plaintiff*. As the Supreme Court of Tennessee has ruled, in a case brought against a patient by a hospital seeking payment for services, the elements of a quantum meruit claim are:

> (1) There is no existing, enforceable contract between the parties covering the same subject matter; (2) The party seeking recovery proves that *it provided* valuable goods or services; (3) *The party to be charged received the goods or services*; (4) The circumstances indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and (5) The circumstances demonstrate that it would be unjust for a party to retain the goods or services without payment.

*Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 198 (Tenn. 2001) (cleaned up). Quantum meruit requires that the *defendant* (Cigna) be the one that *received* the goods and services for which the plaintiff (Baptist) expects payment. Cigna is not a proper defendant to a quantum meruit claim, as Baptist's "services were rendered to the patients, none of whom are party to this" arbitration.

*HCA Health Services*, 2016 WL 3357180, at \*12.

### III.   The Arbitration Awards Were in Manifest Disregard of the Law.

An arbitrator acts in manifest disregard of the law where (i) the applicable legal principle is clearly defined and not subject to reasonable debate; and (ii) the arbitrator refused to heed that legal principle.  (*See* Standard of Review, above.)  Based on the foregoing demonstrations, there should be no question at this point that it was clearly defined under federal and Tennessee law that: (i) ERISA preempted quantum meruit; and (ii) quantum meruit is unavailable under Tennessee law in these exact circumstances.  Precedent on point brooks no room for legitimate debate.

### A.   It was manifest disregard of the law to rule that ERISA does not preempt quantum meruit remedies, especially in Tennessee.

For the reasons set forth in Parts I and II above, there is clearly established precedent throughout the federal courts that ERISA preempts state law quantum meruit remedies.  There is likewise clear precedent from the *HCA Health Services* decision in Tennessee, which straightforwardly held that ERISA preempts quantum meruit claims in Tennessee.  The Panel's decision that ERISA does not preempt quantum meruit cannot be squared with this clear precedent. The Panel's decision was in manifest disregard of the law.

### B.   It was manifest disregard of the law to rule that *HCA Health Services* was wrongly decided or otherwise inapplicable.

The *HCA Health Services* decision is clearly established precedent.  It is unambiguous in content and identical in circumstance.  It applies foundational Tennessee law and follows well-settled law crystallized in previous decisions by many other courts.  It has since been fully endorsed by courts and has been relied on as the determining case in those courts' opinions (including this Court's opinion in *AMISUB*).  It set commercial parties' expectations.  The Panel's decisions creating and applying a quantum meruit remedy cannot be squared with *HCA Health Services*.

27

The Panel's decisions therefore were in manifest disregard of the law.

## Conclusion

For the reasons above, Cigna requests that the Court grant its Application.

Dated: August 14, 2023

Respectfully submitted,

*/s/ Odell Horton, Jr.*
Odell Horton, Jr. (Tenn. Bar No. 12426)
Andrew J. Pulliam (Tenn. Bar No. 16863)
WYATT, TARRANT & COMBS, LLP
6070 Poplar Avenue, Suite 300
Memphis, TN 38119
ohorton@wyattfirm.com
apulliam@wyattfirm.com
901.537.1000

John J. Hamill (*pro hac vice forthcoming*)
Pamela Begaj Loutos (*pro hac vice forthcoming*)
Devin J. Carpenter (*pro hac vice forthcoming*)
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606
john.hamill@us.dlapiper.com
pamela.loutos@us.dlapiper.com
devin.carpenter@us.dlapiper.com
312.368.7036

*Attorneys for Cigna HealthCare of Tennessee, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify—pursuant to 9 U.S.C § 12, Local Rule 5.1(b), and Rules 5(b)(C) and (E) of the Federal Rules of Civil Procedure—that on August 14, 2023 the foregoing was mailed to Baptist's counsel's last known address by first class USPS and by email to the following addresses:

David A. King
POLSINELLI, PC
401 Commerce Street, Suite 900
Nashville, Tennessee 37219
dking@polsinelli.com

*/s/ Odell Horton, Jr.*
Odell Horton, Jr. (Tenn. Bar No. 12426)