IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| CIGNA HEALTHCARE OF TENNESSEE INC., on behalf of itself and its affiliated entities, | )<br>)<br>)<br>) |
| Applicant, | )<br>) |
| v. | ) Case Nos. 2:23-cv-2550-JTF-tmp<br>)            2:23-cv-2500-JTF-tmp |
| BAPTIST MEMORIAL HEALTH CARE CORPORATION, | )<br>)<br>) |
| Respondent. | ) |

**ORDER DENYING APPLICANT'S APPLICATION TO VACATE ARBITRAL AWARD; GRANTING RESPONDENT'S PETITION TO CONFIRM; REMANDING FOR FURTHER PROCEEDINGS**

Where a hospital is required under state and federal law to provide emergency medical services, even to out-of-network patients, may that hospital then seek to recover the value of those services in *quantum meruit* from the out-of-network provider itself? One year ago, the Court answered that question in the negative in *AMISUB (SFH) v. Cigna Health and Life Ins. Co.*, a case that is remarkably similar to the above-captioned matter.[1] Applicant Cigna Healthcare of Tennessee Inc. ("Cigna") hopes to avail itself of that same result in this case predating *AMISUB* where an arbitration panel reached the opposite result. In so doing, Cigna fails to appreciate the two cases' differing procedural postures. Here, the Court does not view this matter solely through the lens of its prior decision. Rather, the Court must consider the entire record, including the

---

[1] No. 21-02308, slip op. (W.D. Tenn. July 11, 2023) (appeal pending).

arbitral award, through "one of the narrowest standards of judicial review in all of American jurisprudence." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005).

Before the Court is Cigna's Corrected Application to Vacate July 11, 2023 Second Partial Final Award and to Vacate in Part September 7, 2022 Partial Final Award, filed on August 24, 2023. (ECF No. 13-1.) Respondent Baptist Memorial Health Care Corporation ("Baptist") filed a response on October 13, 2023. (ECF No. 21.) Cigna replied on November 17, 2023, and Baptist filed a sur-reply with leave of court on December 8, 2023. (ECF Nos. 38 & 41.)[2] For the reasons set forth below, the Application to Vacate both partial final awards is **DENIED**. As a result, Baptist's Petition to Confirm Awards is **GRANTED** with respect to both awards. The Court **REMANDS** the matter to the Panel for further proceedings.

## I.   BACKGROUND[3]

This case's procedural posture and factual background are complex and were discussed at length in the Court's August 26, 2024 Order, so a full recitation is not necessary here. (*See* Case No. 23-cv-2550; ECF No. 39, 2-6.) To summarize, federal and state law requires all hospitals to provide emergency services to anyone in need, regardless of whether they are insured, or their insurance provider is in a contractual relationship with the hospital. (ECF No. 46, 5 & 7 (sealed).) Baptist, a Tennessee nonprofit corporation that operates a Memphis hospital system, complied with the law, and provided out-of-network emergency services to individuals insured by Cigna

---

[2] Also before the Court is Baptist's Counter-Petition to Confirm Arbitration Awards and Enter Judgment, filed in this case's consolidated counterpart, *CIGNA Healthcare of Tennessee, Inc. v. Baptist Memorial HealthCare Corporation*, Case No. 23-cv-2550, on August 18, 2023, when the case was pending in state court. (ECF No. 1-2, 527.) The Court considers only Cigna's Application to Vacate in this Order because the parties raise the same arguments in both matters and the grant or denial of the Application to Vacate is equivalent to the denial or grant of the Counter-Petition to Confirm, respectively.

[3] All citations in this Order refer to the ECF docket entry numbers for Case No. 23-cv-2500 unless otherwise noted.

2

between 2013 and 2019. (*Id.* at 2.) Baptist claims that Cigna wrongfully underpaid or denied altogether certain of these claims. (*Id.*)

Baptist and Cigna agreed to arbitrate this dispute (the "Arbitration"). (*Id.*) Via their Arbitration Agreement, the Parties agreed that the Arbitration Panel would apply federal law to federal substantive legal issues and state law to state substantive legal issues, and that the American Arbitration Association ("AAA") Commercial Rules would govern procedural and process-related issues. (ECF No. 13-2, 5.) The Agreement also indicated that the Panel's awards would be valid and binding upon the Parties. (*Id.* at 542.)

Baptist asserted four causes of action in the arbitration: (1) a derivative claim for ERISA wrongful denial of benefits; (2) a derivative claim for breach of contract for non-ERISA claims; (3) a direct claim for *quantum meruit*; and (4) a claim for violation of the Tennessee Prompt Pay Act. (Case No. 23-2550; ECF No. 14, 8.) The Arbitration was bifurcated into multiple phases, purportedly to address the complexities of the dispute more efficiently. (*Id.*) As relevant here, the Panel issued its Phase 2 "Partial Final Award" on September 7, 2022. (ECF No. 47, 3 (sealed).) The Phase 2 Award resolved all issues between the Parties related to liability for the claims at issue in Phases 1 and 2, including Baptist's derivative causes of action on behalf of Cigna members, and its *quantum meruit* cause of action, which it brought directly against Cigna. (ECF No. 46, 91.) The Panel ruled in Cigna's favor on Baptist's derivative causes of action. (*Id.*) However, the Panel also determined that under Tennessee law, *quantum meruit* applied to the out-of-network emergency services at issue, that such relief was not preempted by ERISA, and that Cigna was liable under Baptist's *quantum meruit* cause of action. (*Id.* at 86, 91.) The Panel left the determination of the reasonable value of the services provided, and any additional issues, for a future hearing. (*Id.* at 91.)

3

On July 11, 2023, the Panel entered its "Partial Final Award for Phase 3(a)." (ECF No. 47, 2.) The purpose of Phase 3(a) was to determine the "reasonable value" of the out-of-network emergency services Baptist was required by law to provide. (*Id.* at 3.) Additionally, this hearing considered the correct reference point "for any award to Baptist, namely whether it should be expressed as a percentage of Baptist's billed charges or rather a multiple of what Medicare would pay, and various issues relating to whether Baptist's costs and profits should be considered in assessing reasonable value." (*Id.*) The Panel ultimately determined that the value corresponding to 78.5% of Baptist's billed charges represented the reasonable value of the out-of-network emergency services that they rendered. (*Id.* at 17.) The Panel indicated that there would be a Phase 3(b) hearing in which they would consider whether their *quantum meruit* ruling would extend to "emergency inpatient" claims. (*Id.* at 18.)

These parallel court proceedings commenced in full on August 24, 2023, before Phase 3(b) concluded. This case was brought pursuant to an exception to the rule that only final arbitral awards are eligible for judicial review. *See* 9 U.S.C. § 10(a)(4); (Case No. 23-cv-2550; ECF No. 39, 10-17). In its August 26, 2024 Order, the Court addressed a number of procedural issues that the parties briefed in both a motion to remand and motion to dismiss. (*See* Case No. 23-cv-2550; ECF No. 39.) In this sequel, the Court considers the merits of Cigna and Baptist's post-arbitral petitions.

## II.   LEGAL STANDARD

Federal courts "play a very limited role in reviewing the decision of an arbitrator." *Visconsi v. Lehman Brothers, Inc.*, 244 F. App'x 708, 711 (6th Cir. 2007). The Court applies "one of the narrowest standards of judicial review in all of American jurisprudence." *Nationwide Mut. Ins. Co.*, 429 F.3d at 643. Under that narrow standard, the Court "must refrain from reversing an arbitrator

4

simply because the court disagrees with the result or believes the arbitrator made a serious legal or factual error." *Id.*

The Federal Arbitration Act ("FAA") provides four grounds upon which a district court may vacate an arbitration award:

(1) Where the award was procured by corruption, fraud, or undue means;
(2) Where there was evident partiality or corruption in the arbitrators, or either of them;
(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Relevant here is 9 U.S.C. § 10(a)(4), which empowers the Court to set aside an arbitral award "where the arbitrator[ ] exceeded [his] powers." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) (quoting 9 U.S.C. § 10(a)(4)) (internal quotation marks omitted). "A party seeking relief under that provision bears a heavy burden." *Id.* "It is not enough ... to show that the [arbitrator] committed an error—or even a serious error." *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). Because the parties "bargained for the arbitrator's construction of their agreement," an arbitral decision "even arguably construing or applying the contract" must stand, regardless of the Court's own view of the dispute's underlying merits. *Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000) (quoting *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 (1960); *Paperworkers v. Misco, Inc.*, 484 U.S. 29, 38 (1987)) (internal quotation marks omitted). "Only if the arbitrator act[s] outside the scope of his contractually delegated authority—issuing an award that simply reflect[s] [his] own notions of [economic] justice rather than draw[ing] its essence from the contract—may a court overturn his determination." *Oxford Health Plans LLC*, 569 U.S. at 569 (quoting *Eastern Associated Coal*, 531 U.S at 62) (internal quotation marks omitted).

5

Via the Supreme Court's holding in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 9 U.S.C. § 10(a) sets forth the "exclusive" grounds upon which a federal court may vacate an arbitrator's decision. 552 U.S. 576, 578 (2008). That said, this case also involves the manifest-disregard standard which comes by way of dicta in *Wilko v. Swan*, 346 U.S. 427, 436 (1953).[4]

A party may establish "manifest disregard" where "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle." *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995)). However, a "mere error in interpretation or application of the law is insufficient. Rather, the decision must fly in the face of clearly established legal precedent." *Jaros*, 70 F.3d at 421 (citation omitted). So long as "a court can find any line of argument that is legally plausible and supports the award then it must be confirmed." *Id.* at 421. "Only where no judge or group of judges could conceivably come to the same determination as the arbitrators must the award be set aside." *Id.*

### III.   ANALYSIS

Cigna seeks vacatur of the Second Partial Final Award on two grounds. First, Cigna argues that the Second Partial Final Award should be vacated pursuant to 9 U.S.C. § 10(a)(4) because the Panel exceeded its authority by (1) creating a remedy and issuing an award not available under

---

[4] In the 16 years since *Hall Street Associates*' holding that the grounds listed in § 10(a) are the "exclusive" vacatur bases, much ink has been spilled about the fate of the manifest-disregard standard in opinions from courts around the country. *See, e.g., In re Romanzi*, 31 F.4th 367, 375 (6th Cir. 2022) (holding that the manifest-disregard standard is "part and parcel" of § 10(a)(4)); *Citigroup Glob. Markets, Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009) (holding that the manifest-disregard standard is an independent non-statutory vacatur standard that must be rejected under *Hall Street Associates*); *Weiss v. Sallie Mae, Inc.*, 939 F.3d 105, 109 (2d Cir. 2019) (noting that the Second Circuit has continued to recognize the manifest-regard standard as a vacatur ground despite its uncertainty as to whether the standard is a "judicial gloss" on the FAA's enumerated grounds, or an independent framework). The Sixth Circuit has provided a detailed account of this dispute in several opinions recently, but has declined to opine as to the standard's continued viability. *See Buck v. Compton*, No. 235092, 2023 WL 8812472, at *3 (6th Cir. Dec. 20, 2023) (collecting cases). As things stand, the manifest-disregard standard remains alive and well in this circuit, so the Court applies the standard here without considering its accompanying theoretical baggage.

Tennessee law and (2) applying state law where federal law governs pursuant to the doctrine of ERISA preemption.[5] (ECF No. 13-1, 32-36.) Second, Cigna contends that vacatur was warranted under the manifest-disregard standard because (1) the Panel's ruling that ERISA does not preempt quantum meruit remedies, specifically or especially in Tennessee, represented a manifest disregard of the law, as was (2) the Panel's decision that *HCA Health Services of Tennessee, Inc. v. BlueCross Blue Shield of Tennessee, Inc.*[6] was either wrongly decided or inapplicable. (*Id.* at 36-37.) Baptist maintains that Cigna has failed to meet its burden under either vacatur ground.

Despite setting forth what initially appear to be many separate legal issues in their extensive briefings, Cigna ultimately presents one or two arguments that they say fit within the parameters of either 9 U.S.C. § 10(a)(4) or the manifest-disregard standard. These arguments are that the awards should be vacated because the Panel wrongly decided that Baptist was entitled to *quantum meruit* relief despite the fact that (1) ERISA preempts this cause of action and (2) *quantum meruit* relief was not available under Tennessee's formulation of that remedy. Cigna insists that in reaching this decision, the Panel either exceeded their authority by violating the Arbitration Agreement's requirement that federal law be applied to federal issues and state law be applied to state issues, warranting relief under 9 U.S.C. § 10(a)(4), or by acting in manifest disregard of state and federal law. The Court now considers whether the reconstructed arguments set forth above satisfy either test.

---

[5] Baptist points out that Cigna seemingly asserts ERISA preemption as a standalone vacatur ground, as opposed to, or in addition to, a demonstration of one of the ways in which the Panel exceeded its authority. (ECF No. 21, 38-40.) This appears to be the case, insofar as Cigna requests that the Court grant it relief by vacating the awards "under ERISA preemption." (ECF No. 13-1, 9.) Such a claim could not stand however, because ERISA preemption is not one of the vacatur grounds set forth in 9 U.S.C. § 10(a). In their reply, Cigna appears to have clarified how ERISA preemption fits into their vacatur challenge; the ERISA preemption argument is instead a subpoint within their broader argument that the Panel exceeded its authority. (ECF No. 38, 15-19.) The Court adopts this construal of the argument.

[6] 2016 WL 3357180 (Tenn. Ct. App. June 9, 2016)

### A. ERISA Preemption

Cigna argues that the Panel erred in finding that Baptist's *quantum meruit* cause of action was not completely preempted by ERISA, and that such error warrants vacatur under both 9 U.S.C. § 10(a)(4) and the manifest disregard standard. (ECF No. 13-1, 27-29.)

ERISA provides that the Act "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). The Supreme Court offered a more detailed account of the preemption scheme when it identified two categories of state laws that "relate to" and thus are preempted by ERISA: (1) laws referring to ERISA plans, and (2) laws with an impermissible connection to ERISA plans. *See Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 86–87, 88–89 (2020); *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319–20 (2016); *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001).

In evaluating whether a state law has an impermissible connection with an ERISA plan, the Court considers whether the state law "governs a central matter of plan administration or interferes with nationally uniform plan administration." *Rutledge*, 592 U.S at 86–87 (quoting *Gobeille*, 577 U.S. at 319–20). State laws have been preempted where they "requir[e] payment of specific benefits,"[7] where they "bind[ ] plan administrators to specific rules for determining beneficiary status,"[8] or where "acute, albeit indirect, economic effects of the state law force an ERISA plan to adopt a certain scheme of substantive coverage."[9] *Id*. at 86-87 (case references

---

[7] *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983).
[8] *See Egelhoff*, 532 U.S. 141.
[9] *See Gobeille*, 577 U.S. at 320

8

provided in footnotes). That said, "not every state law that affects an ERISA plan or causes some disuniformity in plan administration has an impermissible connection with an ERISA plan," particularly where "a law merely affects costs." *Emergency Physician Servs. of New York v. UnitedHealth Grp., Inc.*, No. 20-CV-9183 (JGK), 2024 WL 4229902, at *7 (S.D.N.Y. Sept. 17, 2024) (quoting *Rutledge*, 592 U.S at 87). "ERISA does not pre-empt state rate regulations that merely increase costs or alter incentives for ERISA plans without forcing plans to adopt any particular scheme of substantive coverage." *Rutledge*, 592 U.S at 88.

During the arbitration, and in the briefings, the Parties seem to engage in mortal combat over the effects of the Supreme Court's most recent ERISA preemption case, *Rutledge*. There, the Supreme Court held that ERISA did not preempt an Arkansas law requiring pharmacy benefit managers ("PBMs") to reimburse pharmacies at a rate equal to or greater than the rate the pharmacy paid to acquire drugs even though the law would likely result in ERISA plans paying higher prices for prescription drug benefits in Arkansas than elsewhere. *See* 592 U.S. at 86. The PBMs were not ERISA plans themselves; they acted as "intermediaries between prescription-drug plans and the pharmacies" used by the plans' beneficiaries. *Id.* at 83–84. In so holding, the Supreme Court stressed that the Arkansas law (1) applied to PBMs regardless of whether they managed benefits for ERISA or non-ERISA plans, and (2) merely increased costs and did not require ERISA plans to structure benefits in a particular way, noting that "cost uniformity was almost certainly not an object of pre-emption," *Id.* at 86–89.

The Panel acknowledged that *Rutledge* and most of the cases that the Supreme Court relied on in rendering that decision evaluated whether ERISA preempted a state law passed by a legislature as opposed to a general state common law cause of action (such as *quantum meruit*.) (ECF No. 46, 86.) The Panel ultimately concluded that the logic of *Rutledge* applied to this dispute.

9

(*Id*.) They considered Cigna's attempts to distinguish between ERISA preemption of state statutes and common law before explaining why it found those differences to be immaterial. (*Id.* at 87-89.) Applying *Rutledge*, the Panel held that ERISA did not preempt Baptist's *quantum meruit* claim because "quantum meruit is nothing more than a cost regulation—representing a cost of providing an out-of-network benefit—which does not "relate to" or create an impermissible connection with ERISA plans." (ECF No. 46, 88.)

Cigna argues that the Panel's "refusal to apply ERISA preemption" warrants vacatur because, in so doing, the Panel exceeded its authority and/or manifestly disregarded the law. (ECF Nos. 13-1, 27-29, 36 & 38, 16.) The Court disagrees.

i. **ERISA Preemption Ruling—9 U.S.C. § 10(a)(4)**

Cigna contends that the Panel exceeded its authority because it did not apply federal law to a federal issue, which the Arbitration Agreement requires. Pursuant to the agreement, the Parties agreed that the Panel would apply federal law to federal substantive legal issues and state law to state substantive legal issues. (ECF No. 13-2, 5.) "Ignoring a choice of law provision in an arbitration agreement exceeds the arbitrator's power since the arbitrator's power is borne from that arbitration agreement." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 564 (7th Cir. 2008).

Cigna mischaracterizes the Panel's analysis. Here, the Panel did not ignore or refuse to honor a choice of law provision. The record reflects that Cigna opposed Baptist's state common law cause of action on federal grounds—ERISA preemption. (ECF No. 13-1, 19-20.) In compliance with the terms of the Arbitration Agreement, the Panel evaluated Cigna's ERISA preemption argument under federal law. (ECF No. 46, 86-89.) Upon reviewing federal caselaw, the Panel concluded that ERISA did not preempt the *quantum meruit* claim, meaning that Baptist's

*quantum meruit* claim did not implicate federal law. (*Id.* at 88.) Thus, in applying federal law, the Panel ultimately concluded that federal law did not displace the state law issue. Given that the Panel complied with the terms of the Arbitration Agreement in reaching its decision on the applicability of ERISA preemption, the Court **DECLINES** to vacate the award on this ground.

### ii. ERISA Preemption Ruling—Manifest Disregard

Cigna next argues that the Panel's refusal to apply a Tennessee Court of Appeals opinion pertaining to the same ERISA preemption issue was in manifest disregard of the law. Success here requires a showing that "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle." *Dawahare*, 210 F.3d at 669. The first element requires the existence of controlling legal authority on the issue. *See, e.g., Jaros*, 70 F.3d at 421 (stating that, for there to be manifest disregard, "the decision must fly in the face of clearly established legal precedent"); *Gibbens v. OptumRx, Inc.*, 778 F. App'x 390, 394 (6th Cir. 2019) (finding no manifest disregard where the "arbitrator surveyed relevant caselaw and accurately determined that no authority controls the precise question"). To satisfy the second element, a challenging party must point to controlling authority that the arbitrators disregarded. *See Schafer v. Multiband Corp.*, 551 F. App'x 814, 820 (6th Cir. 2014) ("An arbitrator cannot reject the law, but can disagree with nonbinding precedent without disregarding the law.")

Cigna's argument fails at the first step. They contend that *HCA Health Services of Tennessee, Inc. v. BlueCross Blue Shield of Tennessee, Inc.*[10] was clearly established precedent that the Panel refused to apply. (ECF No. 13-1, 37.) While it is true *HCA Health Services* addresses the same legal issue, Baptist notes that HCA Health Services is an unpublished decision, and the

---

[10] 2016 WL 3357180 (Tenn. Ct. App. June 9, 2016).

11

Tennessee Supreme Court rules reflect that such decisions constitute only persuasive authority. (ECF No. 21, 52.)

Cigna attempts to support this weakness in their argument by reference to several cases from this court and the Tennessee Court of Appeals which generally advise that certain unpublished cases are worthy of deference. (ECF No. 38, 28-29.) First is *Williams v. Lasik Inst., LLC*,[11] where another judge in this district followed and applied an unpublished Tennessee Court of Appeals opinion, stating that he was doing so because it was "the only directly relevant authority available" so it was "incumbent on the [c]ourt to follow and apply that authority." *Id.* at *6-7. The court did not claim that an unpublished Tennessee Court of Appeals opinion was binding authority, but relied upon it solely because it was the only directly relevant authority. The court was clear that "[the unpublished opinion] is persuasive authority." *Id.* at *6 (citing Tenn. R. S. Ct. Rule 4(G)(1)). Next, Cigna cites to *Edwards v. City of Memphis*[12] and a handful of other related Tennessee Court of Appeals decisions. In *Edwards*, the Court of Appeals addressed a litigant's argument that an unpublished decision was "not controlling authority and [had] no precedential value." *Id.* at 17. The court acknowledged that "[w]hile it is true that *unpublished opinions are not controlling* . . . unpublished cases constitute persuasive authority." *Id*. at 18 (emphasis added) (citing Tenn. R. S. Ct. Rule 4(G)). The court then went on to explain that they found the unpublished opinion in question to be "quite persuasive" because it had been relied upon in many subsequent opinions. *Id.* at 18.

Unpublished cases can be highly persuasive and useful. The Court notes that *HCA Health Services*, an unpublished decision, is persuasive, but not binding. That said, manifest disregard requires a showing that the arbitrators failed to heed *binding* legal authority. *See Schafer*, 551 F.

---

[11] 2021 WL 4482968 (W.D. Tenn. Sept. 29, 2021).
[12] 342 S.W.3d 12, 17-18 (Tenn. Ct. App. 2010).

App'x at 820. Cigna fails to show that the arbitrators disregarded binding authority. Thus, the analysis ends here because *HCA Health Services* was the only purportedly binding authority that (1) Cigna claims to have asked the Panel to consider and (2) is in tension with the Panel's ultimate decision.[13] *See Buck v. Compton*, No. 23-5092, 2023 WL 8812472, at *4 (6th Cir. Dec. 20, 2023), *cert. denied*, 144 S. Ct. 2636 (2024) (collecting cases) (holding that the challenging party must demonstrate that the record shows the arbitrators awareness of the law that he alleges to be controlling and a decision that flew in the face of that law). The Court **DECLINES** to vacate the arbitral award on this ground.

### B. Quantum Meruit under Tennessee Law

Next Cigna challenges the Panel's ruling that Baptist was eligible for *quantum meruit* relief under 9 U.S.C. § 10(a)(4) and the manifest-disregard standard. Tennessee recognizes two distinct types of implied contracts; namely, contracts implied in fact and contracts implied in law, commonly referred to as quasi contracts." *Thompson v. Hensley*, 136 S.W.3d 925, 930 (Tenn. Ct. App. 2003) (quoting *Angus v. City of Jackson*, 968 S.W.2d 804, 808 (Tenn. Ct. App. 1997)). "Actions brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and *quantum meruit* are essentially the same. Courts frequently employ the various terminology interchangeably to describe that class of implied obligations where, on the basis of justice and equity, the law will impose a contractual relationship between the parties, regardless of their assent thereto." *HCA Health Services of Tennessee, Inc. v. Bluecross Blueshield of Tennessee, Inc.*, No. M2014–01869–COA–R9–CV, 2016 WL 3357180 at *11 (Tenn. Ct. App. June 9, 2016) ("*HCA Health Services*") (quoting *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154 (1966)).

---

[13] The only other directly on-point case that the Panel appears to have considered held that ERISA does not preempt *quantum meruit* claims. *See Emergency Servs. of Oklahoma, PC v. Aetna Health, Inc.*, 556 F. Supp. 3d 1259, 1264 (W.D. Okla. 2021).

13

Unjust enrichment is "a quasi-contractual theory under which a court may impose a contractual obligation on the parties where one does not otherwise exist." *Angus*, 968 S.W.2d at 808. "In order to establish a claim based on this type of contract, the plaintiff must show that (1) a benefit has been conferred upon the defendant; (2) the defendant appreciated the benefit; and (3) acceptance of the benefit under the circumstances would make it inequitable for the defendant to retain the benefit without paying the value of the benefit." *Id*.

Cigna argues that *quantum meruit* relief was not appropriate because the benefit Baptist conferred through performing medical services was conferred upon the patients, not Cigna. (ECF No. 13-1, 34-35.) The Panel acknowledged a split of authority on the issue of whether *quantum meruit* relief was appropriate, as demonstrated by a handful of Tennessee Supreme Court cases. (ECF No. 56, 78-86.) Following a thorough analysis, the Panel found that Baptist was entitled to *quantum meruit* relief. (*Id.*) Again, this decision is in tension with *HCA Health Services.* 2016 WL 3357180, at *12.

    **i.**    ***Quantum Meruit—*9 U.S.C. § 10(a)(4)**

Turning first to 9 U.S.C. § 10(a)(4), Cigna argues—just as they did in their 9 U.S.C. § 10(a)(4) challenge to the Panel's ERISA preemption ruling—that the Panel exceeded its authority in awarding *quantum meruit* relief because that award was unavailable to Baptist under Tennessee state law, and such relief is barred under federal law. (ECF No. 13-1, 32.)

The Panel applied Tennessee's formulation of the *quantum meruit* rule and determined that Baptist was entitled to relief. (ECF No. 46, 91.) Cigna argued—and continues to argue—that *quantum meruit* relief was not appropriate because the benefit Baptist conferred through performing medical services was conferred upon the patients, not Cigna. (ECF No. 13-1, 34-35.) In support, Cigna indicates that both the Tennessee Court of Appeals and this Court have reached

14

that same conclusion. *See HCA Health Services*, 2016 WL 3357180, at *12; *AMISUB*, No. 21-02308 (W.D. Tenn. July 11, 2023) (appeal pending). Baptist again points out that *HCA Health Services* is an unpublished decision, so it was not controlling. (ECF No. 21, 52.) This means that the Panel, which was contractually required to apply Tennessee state law in deciding this specific issue, was not obligated to apply the rule from *HCA Health Services*. Moreover, the Panel's *quantum meruit* ruling predated *AMISUB* by several months, so the Panel certainly could not have been expected to consider the Court's own ruling on a similar issue. (ECF No. 21, 51 n.26.)

To reiterate, a Panel's decision "even arguably construing or applying the contract" must stand, regardless of this Court's previous conclusions. *See Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. at 62. Although the Panel reached a decision that is in tension with the Court's own later decision in a matter arising from essentially identical facts, the Court now concludes that the Panel's decision did not result from it acting "outside the scope of [its] contractually delegated authority—issuing an award that simply reflect[s] [its] own notions of [economic] justice." *Oxford Health Plans LLC*, 569 U.S. at 569. The Panel clearly analyzed this issue under Tennessee law and binding state court precedent, found reason to disagree with a recent unpublished decision, and reached a different result. The Court therefore **DECLINES** to vacate the Panel's decision on this ground pursuant to 9 U.S.C. § 10(a)(4).

  **ii.**   *Quantum Meruit*—**Manifest Disregard**

Cigna's manifest disregard challenge to the Panel's *quantum meruit* ruling is identical to their other challenge under this standard. To reiterate, Cigna bears the burden of showing that "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle." *Dawahare*, 210 F.3d at 669. Cigna contends that the Panel meets this standard here because "the Panel pronounced that [*HCA Health Services*,] [a]

15

binding decision was "wrongly decided" in its view and it flatly refused to enforce it." (ECF No. 13-1, 15.) While it is true that the Panel refused to enforce *HCA Health Services*, that decision was not binding because it was unpublished. The Panel thoroughly explained its decision to depart from the non-binding authority. (ECF No. 46, 83.) Cigna fails to point to any binding authority that the Panel disregarded in reaching its decision. For that reason, the Court does not find that the Panel refused to heed a clearly defined legal principle in reaching a decision contrary to *HCA Health Services*, and **DECLINES** to vacate the award on this basis.

## IV.    CONCLUSION

Consistent with the foregoing, the Court **DECLINES** to vacate either of the partial final awards. By extension, the Court **GRANTS** Baptist's Petition to Confirm Awards as to both awards. The Court **REMANDS** the matter to the Panel for further proceedings.

**IT IS SO ORDERED,** this 18th day of December, 2024.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE
